Joseph Posillico (pro hac forthcoming)
Richard Lehrer (032161993)
Maxwell Petersen (pro hac forthcoming)
FISHERBROYLES, LLP
100 Overlook Center
2nd Floor
Princeton, NJ 08540
Tel: (845) 519-9525
Joseph.Posillico@fisherbroyles.com
Richard.Lehrer@fisherbroyles.com
Maxwell.Petersen@fisherbroyes.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEDICAL COMPONENTS, INC., <br><br> Plaintiff, <br><br> V. <br><br> BECTON DICKINSON AND COMPANY, C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., <br><br> Defendants. | Civil Action No. 25-16949 <br><br> JURY TRIAL DEMANDED |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Medical Components, Inc. ("MedComp"), by and through its undersigned counsel

for its Complaint against Defendants Becton Dickenson and Company, C.R. Bard, Inc. ("CR

Bard") and BARD Peripheral Vascular, Inc. ("Bard Peripheral") (collectively "Becton

Dickinson" or "Defendants") hereby alleges as follows:

### NATURE OF ACTION

1.  This is an action for infringement of United States Patent Nos. 9,517,329 (the "'329 Patent"),

    10,874,842 (the "'842 Patent") and 11,878,137 (the "'137 Patent"), (collectively the

1

"Asserted Patents") arising under the United States Patent Laws, Title 35, United States Code, § 1 et seq., including 35 U.S.C. §§ 271 and 281.

**THE PARTIES**

2.  MedComp is a corporation organized under the laws of the State of Pennsylvania with a place of business at 1499 Delp Dr., Harleysville, Pennsylvania 19438.

3.  On information and belief, Defendant Becton Dickinson and Company is a New Jersey corporation with its principal place of business located at 1 Becton Drive, Franklin Lakes, New Jersey 07417.

4.  Becton Dickinson and Company has a website at **https://www.bd.com/,** which includes advertisements for its implantable venous access ports sold under the name PowerPort.

5.  On information and belief, CR Bard is a corporation organized under the law of the State of New Jersey with a place of business at 730 Central Ave., Murray Hill, New Jersey 07974.

6.  On information and belief, C.R. Bard is a wholly owned subsidiary of Becton Dickinson and Company.

7.  On information and belief, Defendant Bard Peripheral, is a wholly owned subsidiary and operating division of CR Bard.

8.  Becton Dickinson makes and/or uses and/or sells and/or offers to sell and/or distributes and/or imports into the United States venous access port products sold under the name PowerPort.

**JURISDICTION AND VENUE**

9.  This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

12. Becton Dickenson and Company, CR Bard and Bard Peripheral have and are engaged in business in the District of New Jersey, including one or more of advertising and offering to sell their infringing PowerPort implantable ports in this Judicial District, shipping said ports directly or indirectly into or through New Jersey, and selling and/or participating in the sale of said ports in this Judicial District.

13. Defendants directly and/or through their coordinated distribution network regularly place their PowerPort implantable ports in the stream of commerce with the knowledge and/or understanding that such products will be sold and used in this Judicial District.

14. Defendants are subject to the general jurisdiction of this Court because they reside in this Judicial District and/or have regular and systemic contacts with this forum such that the exercise of jurisdiction over it will not offend the traditional notions of fair play and substantial justice.

15. This Court has personal jurisdiction over Defendants because Defendants have their principal place of business in New Jersey and/or have established minimum contacts with New Jersey that the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

16. This Court has personal jurisdiction over Defendants because Defendants have performed acts of infringement of claims of the '329 Patent, the '842 Patent and the '137 Patent in this Judicial District.

## FACTUAL BACKGROUND

17. MedComp develops, markets, sells and supports cutting-edge vascular access devices, including implantable vascular access ports and accessories to meet the clinical needs of the medical industry.

18. A venous access port is a medical device that can be implanted, usually by a surgeon, under the skin of a patient and used for the delivery to and/or withdrawal of fluids from the patient.

19. Generally, medical professionals who are caring for a patient with an implanted port will access the port through the patient's skin for a variety of potential uses.  Because it is under the skin, the implanted port is not visible to medical professionals who need to access the port, usually by a needle that passes through the skin and then into the port.  Because of this lack of visibility, it is important for the medical professional to learn about the port before initiating access to the port. For example, since it is possible for a port to move once it is implanted, the medical professional should know whether the implanted port is properly located and/or oriented in the patient's body so that access to the port can be safe and effective.  MedComp's patented ports reliably and safely provide this type of information to the medical professional before the medical professional attempts to access the port.

20. MedComp's patented port technology has been used for more than a decade by medical professionals to safely and effectively treat and/or diagnose their patients.

21. Defendants manufacture, distribute and/or import a wide variety of medical products, including venous access ports.

22. Defendants make and sell a line of PowerPort implantable ports and accessories that are used with or in connection with those ports, including the PowerPort products identified in the

4

Becton Dickinson website at https://www.bd.com/en-us/products-and-solutions/products?productBrand=PowerPort%E2%84%A2.

23. Defendants' PowerPort products, marketed under the Becton Dickinson corporate banner, include without limitation: (1) the PowerPort Implantable Port products, which include the PowerPort isp Implantable Port models, the PowerPortSlim Implantable Port models, and the PowerPort Implantable Port models, (2) the PowerPort M.R.I. Implantable Port  ports, which include  the PowerPort isp Implantable Port models, the PowerPort duo M.R.I. Implantable Port models, and the PowerPort M.R.I. Implantable Port models, and  (3) the PowerPort CLEARVUE  and Power Point Vue ports, which includes the PowerPort CLEARVUE isp Implantable Port models, the PowerPort CLEARVUE Slim Implantable Port models, the PowerPort VUE Implantable Port models, and the PowerPort VUE M.R.I. Implantable Port models.

24. Defendants offer for sale, sell, distribute, and use PowerPort implantable ports in New Jersey.

25. PowerPort implantable ports are identified and described by Defendants via the Internet including at: https://www.bd.com/en-us/search?tab=site&query=PowerPort.

26. Since October 2019, the PowerPort implantable ports have included x-ray discernable indicia to assist a medical practitioner in identifying the type and/or other characteristics of the port while the port is implanted in the body of a patient.

27. On information and belief, Becton Dickinson controls the activities of CR Bard and Bard Peripheral, including operational strategies and objectives relating to PowerPort implantable ports.

28. On information and belief, Becton Dickinson, CR Bard, and Bard Peripheral coordinate their activities relating to the making, marketing, distribution, importing, offering for sale, and/or sale of PowerPort implantable ports.

29. On information and belief, Becton Dickinson, CR Bard, and Bard Peripheral communicate with each other in connection with the making, distribution, importing, marketing, offering for sale, and/or sale of PowerPort implantable ports and services that they offer relating to the PowerPort implantable ports.

30. On information and belief, Becton Dickinson, CR Bard, and Bard Peripheral collaborate with each other in connection with the making, distribution, marketing, offering for sale, and/or sale of PowerPort implantable ports and services that they offer relating to the PowerPort implantable ports.

31. On information and belief, Defendants sell the PowerPort implantable ports throughout New Jersey.

**THE '329 PATENT**

32. On December 13, 2016, the '329 Patent entitled "Venous Access Port Assembly With X-Ray Discernable Indicia" was duly and legally issued by the United States Patent and Trademark Office ("USPTO").

33. A true and correct copy of the '329 Patent is attached as Exhibit A to this Complaint.

34. MedComp is the assignee and owner of the right, title, and interest in and to the '329 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement.

35. MedComp practices the claimed invention of the '329 Patent.

36. MedComp marks its products that are covered by the '329 Patent, including via its virtual marking website at: https://www.medcomp.net/patent.

37. Defendants had constructive notice of the '329 Patent at least through MedComp's marking of its products.

38. On information and belief, Defendants had actual knowledge of the '329 Patent prior to the filing of this Complaint.

39. Claim 1 of the '329 Patent recites:

An implantable venous access port assembly, comprising:

a needle-penetrable septum; and

a housing securing the needle-penetrable septum, the housing comprising a housing base having a bottom wall, including X-ray discernable indicia embedded into a thickness of the bottom wall, wherein the X-ray discernible indicia visually indicate, under X-ray examination, an attribute of the port assembly.

## THE '842 PATENT

40. On December 29, 2020, the '842 Patent entitled "Venous Access Port Assembly With X-Ray Discernable Indicia" was duly and legally issued by the USPTO.

41. A true and correct copy of the '842 Patent is attached as Exhibit B to this Complaint.

42. MedComp is the assignee and owner of the right, title, and interest in and to the '842 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement.

43. MedComp practices the claimed invention of the '842 Patent.

44. MedComp marks its products that are covered by the '842 Patent, including via its virtual marking website at: https://www.medcomp.net/patent.

45. Defendants had constructive notice of the '842 Patent at least through MedComp's marking of its products.

46. On information and belief, Defendants had actual knowledge of the '842 Patent prior to the filing of this Complaint.

47. Claim1 of the '842 Patent recites:

An implantable venous access port assembly, comprising:

a needle-penetrable septum, and

a housing securing the needle-penetrable septum, at least a portion of the housing comprising radiopaque material, the housing further comprising X-ray discernable indicia to identify an attribute of the access port assembly,

wherein the X-ray discernable indicia are cut outs formed through at least a portion of the radiopaque material.

## THE '137 PATENT

48. On January 23, 2024, the '137 Patent entitled "Venous Access Port Assembly With X-Ray Discernable Indicia" was duly and legally issued by the USPTO.

49. A true and correct copy of the '137 Patent is attached as Exhibit C to this Complaint.

50. MedComp is the assignee and owner of the right, title, and interest in and to the '137 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement.

51. MedComp practices the claimed invention of the '137 Patent.

52. MedComp marks its products that are covered by the '137 Patent, including via its virtual marking website at: https://www.medcomp.net/patent.

53. Defendants had constructive notice of the '137 Patent at least through MedComp's marking of its products.

54. On information and belief, Defendants had actual knowledge of the '137 Patent prior to the filing of this Complaint.

55. Claim 1 of the '137 Patent recites:

An implantable venous access port assembly, comprising:

a needle-penetrable septum; and

a housing securing the needle-penetrable septum, at least a portion of the housing comprising a radiopaque material, at least one cutout defined in at least a portion of the radiopaque material, the at least one cutout forming at least one X-ray discernable indicium indicative of an attribute of the access port assembly.

## THE POWERPORT PRODUCTS

56. Since October 2019, Defendants have been offering a line of implantable ports under the PowerPort name.

57. Since October 2019, the PowerPort implantable ports offered by Defendants are a line of implantable ports that are sold and offered for sale in this Judicial District under the PowerPort trade name. These PowerPort products include: (1) the PowerPort Implantable Port products, which include the  PowerPort isp Implantable Port models, the PowerPortSlim Implantable Port models, and the PowerPort Implantable Port models, (2) the PowerPort M.R.I. Implantable Port products, which include the PowerPort isp Implantable Port models, the PowerPort duo M.R.I. Implantable Port models, and the PowerPort M.R.I. Implantable Port models, and (3) the PowerPort CLEARVUE and Power Point Vue ports, which includes the PowerPort CLEARVUE isp Implantable Port models, the PowerPort CLEARVUE Slim

Implantable Port models, the PowerPort VUE Implantable Port models, and, the PowerPort VUE M.R.I. Implantable Port models.

58. Defendants have provided literature describing features of the PowerPort port products that include the PowerPort CLEARVUE isp Port, the PowerPort CLEARVUE Slim Port, the PowerPort M.R.I. Port, the PowerPort Implantable Port, the PowerPort isp M.R.I, the PowerPort isp Port, the PowerPort Slim Port, the PowerPort duo M.R.I. Implantable Port, and the other PowerPort port products and how such products are to be utilized by their customers via at least the internet.

59. On information and belief, all PowerPort products sold by Defendants since October 2019 include a needle penetrable septum, a housing, and X-ray discernable indicia.

60. The PowerPort products have been described in product literature as including a radiopaque identifier "…to aid in:

   • Identification of the PowerPort* device under X-ray

   • Identification of a flipped port under x-ray"

61. Since October 2019 each of Defendants' PowerPort implantable port products have included at least one radiopaque identifier that aids in its identification as a power injectable port under x-ray imaging.

62. Defendants provide instructions for their PowerPort implantable port products that instruct users to first verify that a patient has a PowerPort implantable port (e.g., such as the PowerPort CLEARVUE isp port or PowerPort CLEARVUE Slim port) via an imaging procedure. This imaging procedure can include an x-ray imaging process.

63. Defendants provide instructions for their PowerPort implantable port products that inform users that, once a patient is confirmed as having a PowerPort implantable port (e.g. such as

the PowerPort CLEARVUE isp port or PowerPort CLEARVUE Slim port) by use of the x-ray discernable indicia included in the port, the port can be utilized to provide treatment to a patient in compliance with product features of the identified port and the instructions associated with the identified port.

64. The following images (top and bottom views) illustrate where the needle penetrable septum, cap, housing, and x-ray discernable material for the PowerPort M.R.I.  Implantable Port models can be found in these products:





65. The following images (top and bottom views) illustrate where the needle penetrable septum, cap, housing, and x-ray discernable material for the PowerPort isp M.R.I. Implantable port product can be found in these products:



*Taken from:https://www.bd.com/en-us/products-and-soutions/products/product-page. 4808561*



12

66. The following images (top and bottom views) illustrate where the needle penetrable septum, cap, housing, and x-ray discernable material for the PowerPort DUO M.R.I. Implantable port product can be found in these products:



*Taken from:https://www.bd.com/en-us/products-and-soutions/products/product-page.1829570*



67. The following image illustrates where the needle penetrable septum, housing, and x-ray discernable material for the PowerPort CLEARVUE isp Implantable port product can be found in these products:



*Taken from:https://www.bd.com/en-us/products-and-soutions/products/product-page. 1608062*

68. The following image illustrates where the needle penetrable septum, housing, and flange having x-ray discernable material for the PowerPort VUE Titanium Implantable Port product can be found in these products:



Septum

X-ray Discernable Indicia

Cut-Outs

Housing

## DEFENDANTS' KNOWLEDGE OF THE ASSERTED PATENTS

69. MedComp has consistently and continuously marked its access ports covered by the Asserted Patents with the correct patent number.

70. Defendants had constructive notice of the '329 Patent from MedComp's marking of its ports with its patent numbers in a clear, legible, and unconcealed manner.

71. Defendants had constructive notice of the '842 Patent from MedComp's marking of its ports with its patent numbers in a clear, legible, and unconcealed manner.

72. Defendants had constructive notice of the '137 Patent from MedComp's marking of its ports with its patent numbers in a clear, legible, and unconcealed manner.

73. On information and belief, prior to the filing of this action, Defendants had actual knowledge of and analyzed the '329 Patent.

74. On information and belief, prior to the filing of this action, Defendants had actual knowledge of and analyzed the '842 Patent.

75. On information and belief, prior to the filing of this action, Defendants had actual knowledge of and analyzed the '137 Patent.

76. Defendants have continued to make and sell their PowerPort implantable ports since the '329 Patent issued knowing that their products infringe valid claims of the '329 Patent.

77. Defendants have continued to make and sell their PowerPort implantable ports since the '842 Patent issued knowing that their products infringe valid claims of the '842 Patent.

78. Defendants have continued to make and sell their PowerPort implantable ports since the '137 patent issued knowing that their products infringe valid claims of the '137 patent.

79. Defendants have willfully, deliberately, and intentionally continued to infringe one or more claims of the '329 Patent by making and selling their PowerPort implantable ports in reckless disregard of the claims of MedComp's '329 Patent.

80. Defendants have willfully, deliberately, and intentionally continued to infringe one or more claims of the '842 Patent by making and selling their PowerPort implantable ports in reckless disregard of the claims of MedComp's '842 Patent.

81. Defendants have willfully, deliberately, and intentionally continued to infringe one or more claims of the '137 Patent by making and selling their PowerPort implantable ports in reckless disregard of the claims of MedComp's '137 Patent.

**COUNT ONE: INFRINGEMENT OF THE '329 PATENT**

82. MedComp restates and realleges the foregoing allegations as if fully stated herein.

83. In violation of 35 U.S.C. § 271(a), Defendants have directly and continue to directly infringe, both literally and under the doctrine of equivalents, the '329 Patent by making, using, offering for sale, selling, and/or importing at least the following implantable ports that practice and therefore infringe the subject matter in one or more claims of the '329 Patent,

including but not limited to claims 1-4, 6-8, 11-15, 18-20, 23-35., within this Judicial District without authority from MedComp:

(1) the PowerPort Implantable Port, (2) the PowerPort isp Implantable Port, (3) the PowerPort Slim Implantable Port, (4) the PowerPort isp M.R.I. Implantable Port, and (5) the PowerPort duo M.R.I. Implantable Port.

84. The following charts illustrate, via the use of representative models, how each of the PowerPort Implantable Ports and  the PowerPort M.R.I. Implantable Ports infringe at least one claim of each of the Asserted Patents:

| Claim 1 of '329 Patent | PowerPort M.R.I. Implantable Port |
|---|---|
| 1. An implantable venous access port assembly, comprising: <br><br> a needle-penetrable septum; and <br><br> a housing securing the needle-penetrable septum, <br><br> the housing comprising a housing base having <br><br> a bottom wall, including X-ray discernable indicia embedded into a thickness of the bottom wall, <br><br> wherein the X-ray discernible indicia visually indicate, under X-ray examination, an attribute of the port assembly. |  |

| Claim 1 of '329 Patent | Power Port sip Implantable Port |
|---|---|
| 1. An implantable venous access port assembly, comprising:<br><br>a needle-penetrable septum; and<br><br>a housing securing the needle-penetrable septum,<br><br>the housing comprising a housing base having a bottom wall,<br><br>including X-ray discernable indicia embedded into a thickness of the bottom wall,<br><br>wherein the X-ray discernible indicia visually indicate, under X-ray examination, an attribute of the port assembly. |  |

85. In violation of 35 U.S.C. § 271(b) and (c) Defendants have indirectly infringed and continue to indirectly infringe one or more clams of the '329 Patent, including but not limited to claims 1-3, 6-8, 11-15, 18-20, 23-35, within this Judicial District without authority from MedComp by actively inducing direct infringement with knowledge of the '329 Patent /or by contributing to the direct infringement of such patent.

18

86. The implantable ports that infringe the '329 Patent include at least the PowerPort implantable port products, as identified in paragraph 83 hereof, made, marketed, distributed, sold and/or offered for sale by Defendants throughout the United States and in this Judicial District. These implantable ports meet each and every limitation recited in one or more of claims 1-3, 6-8, 11-15, 18-20, 23-35.

87. The infringement of the '329 Patent by Defendants has been, and continues to be, deliberate, willful, and knowing.

88. MedComp has been, and continues to be, damaged and irreparably harmed by Defendants' infringement of the '329 Patent, which will continue unless the Court enjoins that infringement and for which there are no adequate remedies at law.

89. Under 35 U.S.C. § 284, MedComp is entitled to recover damages adequate to compensate for Defendants' infringement of the '329 Patent as well as treble damages for Defendants' willful infringement.

90. The Court should declare this an exceptional case under 35 U.S.C. § 285, entitling MedComp to recover its attorneys' fees for Defendants' infringement of the '329 Patent.

91. Pursuant to 35 U.S.C. § 287, MedComp's marking of its port products with notice of the '329 Patent constitutes constructive notice of the '329 Patent. The filing of this complaint constitutes actual notice to Defendants of their infringement of the '329 Patent.

### COUNT TWO: INFRINGEMENT OF THE '842 PATENT

92. MedComp restates and realleges the foregoing allegations as if fully stated herein.

93. In violation of 35 U.S.C. § 271(a), Defendants have directly and continue to directly infringe, both literally and under the doctrine of equivalents, the '842 Patent by making, using, offering for sale, selling, and/or importing at least the following implantable ports that

practice and therefore infringe the subject matter in one or more claims of the '842 Patent, including but not limited to claims 1-3, 6-8, 11-15, 18-20, 23-28, 31-33, 36 and 37, within this Judicial District without authority from MedComp:

(1) the PowerPort Implantable Port, (2) the PowerPort isp Implantable Port, (3) the PowerPort Slim Implantable Port, (4) the PowerPort isp M.R.I. Implantable Port, (5) the PowerPort duo M.R.I. Implantable Port, (6) the PowerPort CLEARVUE isp Implantable Port, and (7) the PowerPort CLEARVUE Slim Implantable Port, (9) the PowerPort VUE Implantable Port, and (10), the PowerPort VUE M.R.I. Implantable Port.

94. The following charts illustrate, via the use of representative models, how each of the PowerPort Implantable Ports, the PowerPort M.R.I. Implantable Ports and the PowerPort CLEARVUE Implantable Ports infringe at least one claim of each of the Asserted Patents:

| Claim 1 of '842 Patent | PowerPort M.R.I Implantable Port |
|---|---|
| 1. An implantable venous access port assembly, comprising:<br><br>a needle-penetrable septum; and<br><br><br>a housing securing the needle-penetrable septum,<br><br><br><br>at least a portion of the housing comprising radiopaque material,<br><br>the housing further comprising X-ray discernable indicia to identify an attribute of the access port assembly, wherein the X-ray discernable indicia are cut outs formed through at least a portion of the radiopaque material. |  |

| Claim 1 of '842 Patent | PowerPort M.R.I. Implantable Port |
|---|---|
| 1. An implantable venous access port assembly, comprising:<br><br>a needle-penetrable septum; and<br><br><br>a housing securing the needle-penetrable septum,<br><br><br><br>at least a portion of the housing comprising radiopaque material,<br><br>the housing further comprising X-ray discernable indicia to identify an attribute of the access port assembly, wherein the X-ray discernable indicia are cut outs formed through at least a portion of the radiopaque material. | <br> |

| Claim 1 of '842 Patent | PowerPort CLEARVUE isp Implantable Port |
|---|---|
| 1. An implantable venous access port assembly, comprising:<br><br>a needle-penetrable septum; and<br><br><br><br>a housing securing the needle-penetrable septum,<br><br><br><br>at least a portion of the housing comprising radiopaque material,<br><br>the housing further comprising X-ray discernable indicia to identify an attribute of the access port assembly, wherein the X-ray discernable indicia are cut outs formed through at least a portion of the radiopaque material. |  |

96. In violation of 35 U.S.C. § 271(b) and (c) Defendants have indirectly infringed and continue to indirectly infringe one or more clams of the '842 Patent, including but not limited to claims 1-3, 6-8, 11-15, 18-20, 23-28, 31-33, 36 and 37, within this Judicial District without authority from MedComp by actively inducing such infringement with knowledge of the '842 Patent and/or by contributing to the infringement of such patent.

97. The implantable ports that infringe the '842 Patent include at least the PowerPort implantable port products made, marketed, distributed, sold, and/or offered for sale by Defendants throughout the United States and in this Judicial District.  These implantable ports, as

identified in paragraph 93 hereof, meet each and every limitation recited in one or more of claims 1-3, 6-8, 11-15, 18-20, 23-28, 31-33, 36 and 37.

98. MedComp has been, and continues to be, damaged and irreparably harmed by Defendants' infringement, of the '842 Patent which will continue unless the Court enjoins that infringement and for which there are no adequate remedies at law.

99. MedComp under 35 U.S.C. § 284, is entitled to recover damages adequate to compensate for Defendants' infringement of the '842 Patent as well as treble damages for Defendants' willful infringement.

100. The infringement of the '842 Patent by Defendants has been, and continues to be, deliberate, willful, and knowing.

101. The Court should declare this an exceptional case under 35 U.S.C. § 285, entitling MedComp to recover its attorneys' fees for Defendants' infringement of the '842 Patent.

102. Pursuant to 35 U.S.C. § 287, MedComp's marking of its port products with notice of the '842 Patent constitutes constructive notice of the '842 Patent. The filing of this complaint constitutes actual notice to Defendants of their infringement of the '842 Patent.

**COUNT THREE: INFRINGEMENT OF THE '137 PATENT**

103. MedComp restates and realleges the foregoing allegations as if fully stated herein.

104. In violation of 35 U.S.C. § 271(a), Defendants have directly and continue to directly infringe, both literally and under the doctrine of equivalents, the '137 Patent by making, using, offering for sale, selling, and/or importing at least the following implantable ports that practice and therefore infringe the subject matter in one or more claims of the '137 Patent, including but not limited to claims 1, 2, 4-6, 9, 10, 12 -16, 18-21, 24, 26-28, and 30, within this Judicial District without authority from MedComp:

(1) the PowerPort Implantable Port, (2) the PowerPort M.R.I. Implantable Port, (3) the PowerPort isp Implantable Port, (4) the PowerPort Slim Implantable Port, (5) the PowerPort isp M.R.I. Implantable Port, (6) the PowerPort duo M.R.I. Implantable Port, (7) the PowerPort CLEARVUE isp Implantable Port, (8) the PowerPort CLEARVUE Slim Implantable Port, (9) the PowerPort VUE Implantable Port, and (10), the PowerPort VUE M.R.I. Implantable Port.

105.   The following charts illustrate, via the use of representative models, how each of the PowerPort Implantable Ports, the PowerPort M.R.I. Implantable Ports and the PowerPort CLEARVUE Implantable Ports infringe at least one claim of each of the Asserted Patents:

| Claim 1 of '137 Patent | PowerPort M.R.I Implantable Port |
|---|---|
| 1. An implantable venous access port assembly, comprising: <br><br> a needle-penetrable septum; and <br><br> a housing securing the needle-penetrable septum, <br><br> at least a portion of the housing comprising radiopaque material, <br><br> at least one cutout defined in at least a portion of the radiopaque material, <br><br> the at least one cutout forming at least one X-ray discernable indicium indicative of an attribute of the access port assembly. |  |

| Claim 1 of '137 Patent | PowerPort M.R.I. Implantable Port |
| --- | --- |
| 1. An implantable venous access port assembly, comprising:<br><br>a needle-penetrable septum; and<br><br>a housing securing the needle-penetrable septum,<br><br><br><br>at least a portion of the housing comprising a radiopaque material,<br><br><br>at least one cutout defined in at least a portion of the radiopaque material, the at least one cutout forming at least one X-ray discernable indicium indicative of an attribute of the access port assembly. |  |

| Claim 1 of '137 Patent | PowerPort CLEARVUE isp Implantable Port |
|---|---|
| 1. An implantable venous access port assembly, comprising:<br><br>a needle-penetrable septum; and<br><br>a housing securing the needle-penetrable septum,<br><br><br><br>at least a portion of the housing comprising a radiopaque material,<br><br><br>at least one cutout defined in at least a portion of the radiopaque material, the at least one cutout forming at least one X-ray discernable indicium indicative of an attribute of the access port assembly. |  |

107.　In violation of 35 U.S.C. § 271(b) and (c) Defendants have indirectly infringed and continue to indirectly infringe one or more clams of the '137 Patent, including but not limited to claims 1, 2, 4-6, 9, 10, 12-16, 18-21, 24, 26-28, and 30, within this Judicial District without authority from MedComp by actively inducing such infringement with knowledge of the '137 Patent and/or by contributing to the infringement of such patent.

108.　The implantable ports that infringe the '137 Patent include at least the PowerPort implantable port products, as identified in paragraph 104 hereof, made, marketed, distributed, sold, and/or offered for sale by Defendants throughout the United States and in this Judicial

District.  These implantable ports meet each and every limitation recited in one or more of claims 1, 2, 4-6, 9, 10, 12-16, 18-21, 24, 26-28, and 30.

109.    The infringement of the '137 patent by Defendants has been, and continues to be, deliberate, willful, and knowing.

110.    MedComp has been, and continues to be, damaged and irreparably harmed by Defendants' infringement of the '137 Patent, which will continue unless the Court enjoins that infringement and for which there are no adequate remedies at law.

111.    MedComp under 35 U.S.C. § 284, is entitled to recover damages adequate to compensate for Defendants' infringement of the '137 Patent as well as treble damages for Defendants' willful infringement.

112.    The Court should declare this an exceptional case under 35 § U.S.C. 285, entitling MedComp to recover its attorneys' fees for Defendants' infringement of the '137 Patent.

113.    Pursuant to 35 U.S.C. § 287, MedComp's marking of its port products with notice of the '137 Patent constitutes constructive notice of the '137 Patent. The filing of this complaint constitutes actual notice to Defendants of their infringement of the '137 Patent.

### DEMAND FOR JURY TRIAL

114.    MedComp demands a trial by jury under Rule 39 of the Federal Rules of Civil Procedure for all issues triable by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the relief requested in the Prayer for Relief below.

(a) That Defendants be adjudged to have infringed, contributed to, and/or induced the infringement of one or more claims of the '329 Patent;

(b) That Defendants be adjudged to have infringed, contributed to, and/or induced the infringement of one or more claims of the '842 Patent;

(c) That Defendants be adjudged to have infringed, contributed to, and/or induced the infringement of one or more claims of the '137 Patent;

(d) That Defendants be adjusted to have engaged in willful infringement of the '329 Patent;

(e) That Defendants be adjusted to have engaged in willful infringement of the '842 Patent;

(f) That Defendants be adjusted to have engaged in willful infringement of the '137 Patent;

(g) That Plaintiff be awarded damages for infringement of the '329 Patent, including damages adequate to compensate Plaintiff for Defendants' past infringement of the '329 Patent including lost profits but not less than a reasonable royalty, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those not presented at trial;

(h) That Plaintiff be awarded damages for infringement of the '842 Patent, including damages adequate to compensate Plaintiff for Defendants past infringement of the '842 Patent including lost profits but not less than a reasonable royalty, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those not presented at trial;

(i) That Plaintiff be awarded damages for infringement of the '137 Patent, including damages adequate to compensate Plaintiff for Defendants past infringement of the '137 Patent including lost profits but not less than a reasonable royalty, and any continuing or future

infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those not presented at trial;

(j) That Defendants pay an ongoing royalty in an amount to be determined for any continued infringement of the '329 Patent after the date the judgment is ordered;

(k) That Defendants pay an ongoing royalty in an amount to be determined for any continued infringement of the '842 Patent after the date the judgment is ordered;

(l) That Defendants pay an ongoing royalty in an amount to be determined for any continued infringement of the '137 Patent after the date the judgment is ordered;

(m) That this case be declared an exceptional case under 35 U.S.C. § 285;

(n) That Plaintiff's damages be trebled pursuant to 35 U.S.C. § 284;

(o) That Plaintiff's be awarded its attorneys' fees and costs pursuant to 35 U.S.C. § 285;

(p) That this Court permanently enjoin Defendants, their officers, directors, principals, agents, servants, employees, successors, assigns, affiliates, and all that are in active concert or participation with Defendants, or any of them, from further infringement of the Asserted Patents and that Defendants be permanently enjoined from infringing the Asserted Patents and from making, using, selling, offering to sell, or distributing the Defendants' infringing implantable ports;

(q) That Plaintiff be awarded pre- and post-judgment interest on all damages;

(r) That Plaintiff be awarded all its costs and expenses in this action; and

(s) That Plaintiff be awarded such further and other relief as the Court may deem just and proper.

Dated: October 27, 2025          /s/ Richard M. Lehrer
                                 Joseph Posillico (pro hac forthcoming)
                                 Richard Lehrer (032161993)

Maxwell Petersen (pro hac forthcoming)
FISHERBROYLES, LLP
100 Overlook Center
2nd Floor
Princeton, NJ 08540
Tel: (845) 519-9525
Joseph.Posillico@fisherbroyles.com
Richard.Lehrer@fisherbroyles.com
Maxwell.Petersen@fisherbroyes.com

*Attorneys for Plaintiff*